**Betty Friday ADAMS, Appellant,**

v.

**Robert K. ADAMS, Jr., Appellee.**

**No. 11542.**

Court of Civil Appeals of Texas.

Austin.

Oct. 25, 1967.

Peter P. Zaremba, Austin, for appellant.

Brown, Erwin, Maroney & Barber, E. Richard Criss, Jr., Austin, for appellee.

HUGHES, Justice.

On July 19, 1966, Betty Friday Adams, appellant, filed a petition for a bill of re-

view in the trial court by which she sought to vacate a judgment rendered in such court on February 16, 1965, granting her husband, Robert K. Adams, Jr., appellee, a divorce, custody of their five sons with reasonable visitation rights to appellant and approving a property settlement mutually agreed to by the parties. The grounds upon which such bill of review was sought were (1) that appellee was not a bona fide inhabitant of the State of Texas for one year just prior to the filing of such suit, nor had he then resided in Travis County for the prior six months, (2) that she executed a waiver of citation in such suit under duress and in reliance upon false promises and representations of appellee, (3) that appellee told her that unless he procured a divorce his military career would be destroyed and that he, she and their children would suffer socially, militarily and economically; that he faced the filing of general court martial charges even though he had been investigated and no charges filed, (4) that appellee promised her that once the divorce was final and he married the person who could ruin his life that he would, within a short time, divorce this person and remarry her.

Appellant also alleged that she had just recently realized that appellee had no intention of fulfilling his promises; that she, appellee and their children had been out of the State since the divorce and, until now she lacked sufficient funds to institute this proceeding.

Trial was to the court, without a jury, who made these findings and conclusions:

"1. Judgment was entered in Cause Number 141,184 on February 16, 1965, supported by the testimony of Robert K. Adams, Jr. and by virtue of a waiver and agreement executed by Betty Friday Adams and filed among the papers of the Court. A copy of said judgment was mailed to Betty Friday Adams and received by her. She made no protest as to the judgment or its provisions. She knew of the remarriage of Robert K. Adams, Jr. Subsequently, she had litigated a change of custody proceeding in the State of Washington without success.

2. Betty Friday Adams was fully aware of the judgment and satisfied with it until several months following its rendition when visitation of the children first became a problem between the parties.

3. Betty Friday Adams wrote a personal letter to the judge of this Court following entry of the judgment in which no protest was made against the judgment or its effect.

4. The first objection that was made to the judge of this Court so far as the judge or the papers of the Court are concerned, came seventeen months following the judgment and on July 19, 1966.

5. Betty Friday Adams proved no fraud committed against her in connection with the hearing conducted by this Court in No. 141,184 or the final judgment entered therein. There has been no showing of extrinsic fraud which would justify a setting aside or review of said judgment."

Judgment was rendered denying appellant any relief.

The first point of appellant is that the trial court in the original divorce suit erred in finding that appellee complied with the residence requirements of Art. 4631, Vernon's Ann.Tex.Civ.St., and with the evidentiary requirement of Art. 4632 id.

We do not pass upon this point for the reason that we agree with the trial court that appellant has not shown herself to be entitled to equitable relief from the divorce judgment even though the first point be considered and sustained.

The second point made by appellant is that the trial court in the original suit erred in rendering judgment for appellee because the evidence was not full and satisfactory as required by Art. 4632, supra.

We do not consider this point for the reasons given for not considering the first point.

The third point of appellant is that the trial court erred in hearing the original divorce suit on February 16, 1965, because he, the trial judge, knew that appellant had requested postponement of the original setting for February 2, 1965.

This ground of attack on the divorce judgment was not alleged in the petition for bill of review and we are not required to consider it. However, we will briefly state the facts with reference to it.

Appellant executed a waiver of service of citation in the case and made her appearance therein. She filed no answer. Appellee, a soldier stationed at Spokane, Washington, where appellant was also living at the time, came to Austin for the purpose of obtaining a divorce on February 2, 1965. Appellant knew he was coming to Texas for this purpose. When appellee arrived in Austin he learned from his attorney that appellant had engaged an attorney to have the case postponed. This attorney was paid $5.00 for this service by appellant and the attorney informed her that if he was to represent her in the case he would have to be paid $250.00. The attorney was not paid and he did not represent her.

Appellant testified:

"Q You also knew that your husband was in Austin and had flown from Spokane down to Austin for the purpose of that hearing, at that first hearing?

A Yes.

Q And is it your testimony that you didn't even know anything about the second hearing?

A I didn't know the exact date.

Q Well, did you know there was going to be another hearing on the divorce?

A I guess. He told me he had to come back down here, and I supposed that was why he was coming back.

\* \* \* \* \* \*

Q Why did you tell your mother, then, when she testified up here, that she called on February 15 that Robert was on the way down to Texas to get the divorce?

A I presumed that is why he was.

Q You knew there was a divorce getting ready to come up?

A I didn't know when.

Q But he leaves up there in Washington in the middle of the week, on the 15th or so, to get down here, and you tell your mother on the 15th that there is going to be a divorce, and you knew he was coming to Texas for that hearing, didn't you?

A I didn't know what it was going to be.

Q You kind of had an idea, though, it might be the next day or so, didn't you?

A Yes, I guess.

Q And you didn't do anything at that time to attempt to postpone that hearing?

A I didn't have the money to pay another attorney."

Under these circumstances, appellant had no one to blame, but herself, for not keeping track of her case and for not answering or not appearing. The trial court had no knowledge, when he tried the case, that appellant desired to contest it. The point is overruled.

The last point of appellant is that the trial court erred in finding that no showing of extrinsic fraud had been established to

justify a setting aside or review of the divorce judgment.

Appellant testified, and it is undisputed, that she and appellee had agreed that she would not contest the divorce, that she would get their car and furniture and that he should pay their debts and be awarded custody of their children. She further testified, however, that they agreed that she was to get the children back when she procured employment and became established and that appellee would divorce his wife and remarry her. The making of these latter agreements was denied by appellee.

Appellee also denied that he ever told appellant that a divorce was necessary in order that he could marry the woman who could destroy his military career.

■ We need not decide the legitimacy of the agreements relied upon by appellant to constitute extrinsic fraud. Obviously, they are agreements the performance of which the parties could not guarantee. The granting of divorces and awarding custody of children are judicial matters for courts to determine. Furthermore, an agreement to divorce one's wife in order to marry the promisee is, or at least should be, against public policy.

■ Our holding is that the findings of the trial court are supported by the evidence and are sustained by us.

■ Appellant not having established that extrinsic fraud was practiced upon her in the divorce proceedings, she is not entitled to set the judgment aside in this equitable proceeding. Whether she had a meritorious defense to the divorce action is a question we need not consider. Alexander v. Hagedorn, 148 Tex. 565, 226 S.W.2d 996.

The judgment of the trial court is affirmed.

Affirmed.