**TRAVENOL LABORATORIES, INC., et al, Appellants,**

v.

**BANDY LABORATORIES, INC., Appellee.**

**No. 6365.**

Court of Appeals of Texas, Waco.

March 4, 1982.

Rehearing Denied March 31, 1982.

Robert A. Gwinn and Charles L. Perry, Seay, Gwinn, Crawford, Mebus & Blakeney, Dallas, Hilton H. Howell, Naman, Howell, Smith, Lee & Muldrow, P. C., Waco, for appellants.

Charles B. McGregor, Beard & Kultgen, Waco, for appellee.

OPINION

McDONALD, Chief Justice.

This is an appeal by plaintiffs (appellants) Travenol and Herndon, from judgment they take nothing, rendered upon a directed verdict, in a bill of review proceeding.

Bandy Laboratories, defendant (appellee), a manufacturer of veterinary products, including rabies vaccine, filed the original suit in 1977 against Travenol and Herndon, alleging that three Serials (60–61–62) of rabies vaccine manufactured by it, had become contaminated with bacteria, and that two serials were rendered unmarketable as a result; that surgeon's gloves manufactured by Travenol and sold by Herndon to Bandy had microscopic holes which permitted bacteria to pass from the wearer's hand into the vaccine. After trial to a jury, judgment was rendered November 10, 1978 in favor of Bandy and against Travenol and Herndon for $144,000. The judgment was affirmed on appeal. *Travenol Laboratories, Inc. v. Bandy Laboratories, Inc.,* CCA (Waco) NRE, 608 S.W.2d 308.

Thereafter and within the time in which a bill of review may be filed, Travenol and Herndon filed this bill of review proceeding alleging that they have a meritorious defense to Bandy's suit against them which they were prevented from making due to the fraud, accident, mistake or wrongful action of Bandy, unmixed with any negligence on their part.

Specially Travenol and Herndon alleged that despite discovery requests having been made which would have called for its disclosure, Bandy failed to disclose in the first trial that in producing Serials prior to Serials 60–62 it had consistently and illegally added a strong chemical decontaminate, beta propiolactone (BPL) to the vaccine; that the use of BPL in prior Serials was extremely significant with respect to the source of bacterial contamination in Serials 60–62, and would have been identified and noted had such prior use been reflected in the production records, that Andres Menchu an employee and Vice President of Bandy who testified at the first trial that in his opinion the cause of contamination in Serials 60–62 was the pinholes in the gloves, had since the first trial discovered that BPL was used in the production of prior Serials of the rabies vaccine, and that this fact was significant with respect to the question of the source of the contamination in Serials 60–62, and that he is now of the opinion the contamination was not caused by the defects in the gloves.

Bandy moved for summary judgment which the trial court denied. By agreement of the parties (with approval of the trial court), trial on the merits was bifurcated, a jury being empaneled to hear the issue as to whether the prior judgment was rendered due to fraud, accident, mistake or wrongful act of Bandy, unmixed with any negligence on Travenol and Herndon's part. At the close of plaintiff's evidence the trial court granted Bandy's motion for directed verdict and thereafter rendered judgment that Travenol and Herndon take nothing. Motion for new trial was overruled by operation of law.

Travenol and Herndon appeal on 6 points, dominant of which assert the trial court erred in granting the motion for instructed verdict (and not granting a new trial) because there is a material fact issue as to the existence of extrinsic fraud, accident, mistake or wrongful conduct, unmixed with any negligence on the part of appellants.

Bandy by reply points asserts: Travenol, et al failed to offer evidence raising an issue of fact as to whether they were prevented by fraud from fully developing their defense; failed to present evidence raising an issue of fact on the question of their own negligence; and that the alleged fraud was intrinsic and not extrinsic.

In passing upon the question of the trial court's authority to instruct a verdict, the evidence must be considered in the light most favorable to the party against whom the verdict is instructed. Where there is any conflicting evidence of probative nature, a determination of the issue is for the jury. *Texas Employers Ins. Assn. v. Page*, S.Ct., 553 S.W.2d 98.

A bill of review complainant must open and assume the burden of proving that the judgment was rendered as the result of fraud, accident or wrongful act of the opposite party, unmixed with any negligence of his own. *Baker v. Goldsmith*, S.Ct., 582 S.W.2d 404. And there is a strong policy favoring the finality of judgments, *Baker v. Goldsmith*, supra; *Alexander v. Hagedorn*, S.Ct., 148 Tex. 565, 226 S.W.2d 996.

Finally fraud in relation to attacks on final judgments is either extrinsic or intrinsic, and only extrinsic fraud will entitle a complainant to relief. Intrinsic fraud in the procurement of a judgment is not ground for vacating such judgment in an independent suit brought for that purpose. And within that term is included fraudulent instruments, perjured testimony, or any matter which was actually presented to and considered by the trial court in rendering the judgment assailed. All mistakes and errors must be corrected from within by motion for new trial; or to reopen the judgment, or by appeal; the fraud which would otherwise relieve must be in some matter other than the issue in controversy in the action. *Alexander v. Hagedorn*, supra.

The rationale for not considering intrinsic fraud is that if a losing party can obtain a bill of review on matters actually presented at the trial, he will be able to retry his case indefinitely.

Bandy had manufactured rabies vaccine of "caprine origin, killed virus type" for a number of years. The production of rabies vaccine is regulated and supervised by the U. S. Department of Agriculture, which must approve a manufacturer's production outline (recipe for production). Bandy had an approved outline (which did not authorize use of BPL) for production for marketing; and had an approved outline authorizing use of BPL for production for research and development purposes. The most important considerations in the production of a vaccine are: potency (ability to do the intended job), sterility (absence of contamination) and safety (absence of harmful effects).

The brains of rabid goats were used to make the vaccine. It was necessary to kill the rabies virus and also to kill any bacterial contaminants in the brains, in order to make a sterile and safe vaccine. Bandy had used a mixture of 0.5% phenol and 0.2% BPL to achieve this in some Serials prior to 60–62. Phenol alone will supposedly do the job, but BPL does the job more effectively. But BPL was prohibited for use in vaccine to be marketed in the United States because of possibility it would cause cancer. Serials 60–62, which were contaminated with various bacteria, were produced with the addition of phenol to kill the live virus and bacteria contaminants. No BPL was used in the production of Serials 60–62. These Serials when completed were contaminated with bacteria, were rendered unmarketable, to Bandy's damage. Menchu, Bandy's Vice President, testified in the first trial he investigated the cause of the contamination and that in his opinion it was caused by the admitted pinholes in the gloves manufactured by Travenol. After the first trial Menchu had differences with Bandy (and its successor) over his entitlement to stock in the corporation; and/or a royalty on vaccines developed by him, and his employment and association with Bandy (and its successor) terminated. He testified that after the first trial he thought more about the source of the contamination of the vaccine and upon learning from records (that were in his custody all along) that

BPL had been used in prior Serials of the vaccine, that he concluded that the absence of BPL in Serials 60–62 would change his opinion as to cause of contamination and testimony that the contamination was caused by the pinholes in the gloves. Menchu advised Travenol and Herndon of this, and the instant bill of review proceeding resulted.

The basis of Travenol's and Herndon's case is the claim that the use of BPL in Serials produced prior to 60–62 was concealed from them. They say it was concealed from them because it was not revealed in the joint deposition of Dr. Bandy (president of Bandy) and Mr. Menchu (Vice President of Bandy); because they were not furnished with the production outline which reflected the use of BPL; and because certain pages showing use of BPL were removed from certain prior production records.

The suit in the first trial was for damages for contamination of Serials 60–62. While some questions in the deposition of Dr. Bandy and Mr. Menchu were generally directed at production of rabies vaccine for the two years preceding Serials 60–62, it is clear that the inquiries made of Dr. Bandy and Menchu in the joint deposition were directed at production of Serials 60–62. Mr. Menchu testified he was asked about Serials 60–62; and did not recall being asked about prior Serials; and Dr. Bandy testified he thought, at the time, the inquiries to him in the deposition pertained to Serials 60–62.

The production outline by which the 60–62 Serials were produced was furnished Travenol and Herndon; the research outline providing for use of BPL was not asked for and not furnished.

There is no proof positive that the pages showing use of BPL in prior production were not in the production records at the time discovery was being made before the earlier trial. And the witness Menchu (for Travenol, et al) in this proceeding, who was the custodian of the production records of Bandy testified that at the time of the

taking of the joint deposition prior to the first trial that he was not asked for a single record that was not made available.

The witnesses Abshier, Unberhagen and Rogers who testified by deposition in the earlier trial and who were former employees of Bandy; and who made no mention of earlier use of BPL in the production of rabies vaccines in their depositions prior to the first trial, testified by deposition at the second trial that they had no reason to conceal the earlier use of BPL, and would have told all about it if they had been asked but were not asked.

Production record of Serial 57 which was introduced at the second trial reflects the use of BPL; but was never requested prior to the first trial. (Nor were any other production records prior to Serials 60–62 requested).

And during the joint deposition of Dr. Bandy and Mr. Menchu prior to the first trial counsel for Travenol exclaimed, "Well all I'm trying to find out is what happened to [Serials] 60, 61 and 62. I couldn't care less about the others because we're not getting sued for those".

The matters appellants complain about were never requested or never clearly asked about, and if appellants did not get what they now say they wanted, it was because of their own negligence. There is no evidence of a deliberate concealment of facts which prevented appellants from presenting their case unmixed with any fault or negligence on their part.

Appellants' witnesses' testimony (with the exception of Menchu's testimony), would have been little if any different in the first trial if they had known that BPL was used in earlier Serials. As to Menchu he simply changed his opinion on the basis of reevaluation of data that he had in his own possession at time of the first trial.

Finally we think that the alleged fraud [which we do not find] was intrinsic and not such fraud as to authorize setting aside of the former judgment.

All appellants' points and contentions have been considered and are overruled.

AFFIRMED.