Opinion issued June 15, 2023



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-22-00118-CV

————————————

## JEFFERY TYRONE JENKINS, Appellant

## V.

## MERIDITH JEVON CRISWELL, Appellee

---

**On Appeal from the 257th District Court**
**Harris County, Texas**
**Trial Court Case No. 2020-03943**

---

## MEMORANDUM OPINION

Appellant Jeffery Tyrone Jenkins appeals the granting of his former wife's bill of review, overturning their divorce decree. On appeal, Jenkins challenges the ruling as an abuse of the trial court's discretion. We affirm.

## Background

Jenkins and Meridith Jevon Criswell married in December 2000 and separated nineteen years later. In January 2020, Criswell filed for divorce in Harris County. Jenkins proceeded pro se. As part of the divorce proceeding, the parties needed to decide how to divide their four retirement accounts. The parties met with Criswell's attorney in January 2020 to discuss the division and the use of a Qualified Domestic Relations Order (QDRO). At the meeting, the parties agreed that each would be awarded 50% of the other's community portion from their respective retirement accounts. Each would pay fees associated with preparing their own respective QDROs.

In April 2020, Criswell's counsel filed a decree and prove-up submission for the divorce, which was subsequently granted by the court. After the court granted the divorce, Criswell's counsel realized that an incorrect draft of the decree had been submitted to the court. It stated that each party would keep his or her own respective retirement accounts. Criswell's counsel immediately advised both parties of the error. They planned to seek an agreed judgment nunc pro tunc, but Jenkins refused to execute the agreement. The court lost plenary jurisdiction.

In June 2020, Criswell sought a bill of review. Both parties appeared in person, and the court conducted a hearing. At the hearing, Criswell testified that the parties agreed to share 50% of each other's retirement accounts and that they

had met with Criswell's counsel to determine how to effectuate this goal. Criswell testified that following the meeting, Jenkins sent her information for his two retirement accounts, "so that [they] could get the accurate numbers, financial numbers for the division."

Shortly after signing the decree and prove-up affidavit, Criswell learned that a mistake had been made in the divorce documents. She notified Jenkins and told him that they would each need to re-sign the divorce documents. Criswell testified that Jenkins understood and stated that he would sign when he returned from work. As an offshore tankerman, Jenkins was often absent from Harris County as his job required. Jenkins never signed the order. By the time Criswell realized that Jenkins had no intention of executing a nunc pro tunc judgment, it was too late to file a motion for new trial.

Criswell's counsel testified that she held a conference in January 2020 with Criswell and Jenkins to explain QDROs. They discussed each taking half of the other's retirement accounts in the divorce. Criswell's counsel explained that since Jenkins had more in his account, it would be reasonable to deduct what Criswell owed him and use only one QDRO. Jenkins did not want to do that, and he agreed to pay for preparation of a second QDRO. After the meeting, Jenkins forwarded his account numbers to Criswell's counsel to aid in preparing the QDROs. Criswell's counsel testified that if the parties did not intend to share the money in their

retirement accounts, there would have been no need to exchange the account numbers and no need to discuss preparation costs.

Criswell's counsel testified that she gave her contemporaneous notes to her paralegal, who prepared the draft decree. Criswell's counsel testified that the notes she gave the paralegal erroneously stated that "everybody keeps everything, everybody keeps his own." Her paralegal interpreted this to relate to the retirement accounts. The divorce decree and prove-up documents were submitted to the court reflecting this error, rather than that the parties intended to share half of each other's accounts. Criswell's counsel testified to the additional struggle the COVID-19 pandemic caused in preparing client documents, as she and her employees worked from their separate homes without the benefit of conferring in an office. The prove-up was also set by submission rather than with oral testimony, which would have made it readily apparent that the documents were incorrect. Hearings were not available at the time due to the pandemic.

Once Criswell's counsel found the mistake, she immediately informed the parties. Because Jenkins worked offshore, it often took him time before he would respond to Criswell's counsel. Nonetheless, Criswell's counsel believed that Jenkins would sign when he was available. Due to Jenkins's employment, Criswell's counsel did not think it was unusual that Jenkins did not sign immediately. Criswell's counsel learned via an e-filing by Jenkins's newly retained

4

counsel that he would not be signing the agreed judgment. By that time, the court had lost plenary power. Criswell's counsel testified that if she had known Jenkins would not sign, she would have filed a motion for new trial immediately while the court retained plenary power.

Jenkins testified that during the January meeting with Criswell and her counsel, he agreed to the division of the retirement accounts. He also testified that he provided his information to Criswell's counsel to assist in the effort. Jenkins testified that, once informed of the mistake in the decree, he told Criswell and her counsel that he "was not signing anything else."

At the conclusion of the hearing, the court granted Criswell's bill of review and referred the parties to mediation. The court stated that it was clear from the testimony that there was some avoidance, part of which was unintentional due to Jenkins working out of town and some of which was intentional avoidance designed to pass the time to file a motion for new trial.

In January 2022, the trial court signed a final decree of divorce. Ten days later, the court signed a QDRO. Jenkins appeals, asking the court to reverse the bill of review.

## Bill of Review

Jenkins argues that the trial court abused its discretion in granting Criswell's bill of review. He argues that she did not present a meritorious defense but instead

a "change of heart" based on "greed." He argues that Criswell's counsel's mistake in drafting the divorce documents is not a meritorious defense and that his own conduct does not constitute extrinsic fraud. Finally, he argues that Criswell did not exercise due diligence.

## A.  Standard of Review

A bill of review "is an equitable proceeding brought by a party seeking to set aside a prior judgment that is no longer subject to challenge by a motion for new trial or appeal." *Caldwell v. Barnes*, 154 S.W.3d 93, 96 (Tex. 2004); *see also PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 275 (Tex. 2012) (stating same). Because of the importance our legal system places on the finality of judgments, bills of review are permitted only in exceptional circumstances. *Nelson v. Chaney*, 193 S.W.3d 161, 165 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (citing *Alexander v. Hagedorn*, 226 S.W.2d 996, 998 (Tex. 1950)). To prevail, the petitioner must plead and prove (1) a meritorious defense to the cause of action alleged to support the judgment, (2) that she was prevented from making by the fraud, accident, or wrongful act of her opponent, (3) unmixed with any fault or negligence of her own. *Caldwell*, 154 S.W.3d at 96.

We review a trial court's ruling on a bill of review for abuse of discretion, indulging every presumption in favor of the court's ruling. *Perridon v. Perridon*, No. 01-16-00721-CV, 2017 WL 4782540, at *2 (Tex. App.—Houston [1st Dist.]

Oct. 24, 2017, no pet.) (mem. op.) (citing *Davis v. Smith*, 227 S.W.3d 299, 302 (Tex. App.—Houston [1st Dist.] 2007, no pet.)). "The burden on a bill of review complainant is heavy because it is fundamentally important that judgments be accorded some finality; therefore, bills of review seeking relief from otherwise final judgments are scrutinized 'with extreme jealousy and the grounds on which interference will be allowed are narrow and restricted.'" *Narvaez v. Maldonado*, 127 S.W.3d 313, 319 (Tex. App.—Austin 2004, no pet.) (quoting *Alexander*, 226 S.W.2d at 998)). Because the record reflects that the district court did not make findings of facts and conclusions of law, we will affirm the district court's judgment if it is correct on any legal theory supported by the evidence. *Davis*, 227 S.W.3d at 302 (citing *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990)).

## B. Analysis

### 1. Meritorious Defense

Jenkins first alleges that Criswell failed to allege a meritorious defense. Criswell responds that she was entitled to a fair and equitable division of the community property accumulated during the marriage and was unable to make the defense due to Jenkins's attempt to run out the clock on the court's plenary power.

"[A]s a pretrial matter," the complainant must "present prima facie proof to support the contention" that she has a meritorious defense, which has the purpose of assuring the court "that valuable judicial resources will not be wasted by

conducting a spurious 'full blown' examination of the merits." *Baker v. Goldsmith*, 582 S.W.2d 404, 408 (Tex. 1979); *In re Office of Atty. Gen.*, 276 S.W.3d 611, 618 (Tex. App.—Houston [1st Dist.] pet. struck, 2008) (stating when complainant not alleging non-service, he must present prima facie proof of meritorious defense). Such a "prima facie meritorious defense is made out when . . . the complainant's defense is not barred as a matter of law and . . . he will be entitled to judgment on retrial if no evidence to the contrary is offered." *Baker*, 582 S.W.2d at 408–09. This determination is a "question of law for the court." *Id.* at 409. "If the court determines that a prima facie meritorious defense has not been made out, the proceeding terminates and the trial court shall dismiss the case." *Id.* "On the other hand, if a prima facie meritorious defense has been shown, the court will conduct a trial." *Id.*

The record reflects that the parties each had two retirement accounts containing community assets that accumulated during their marriage. Criswell's testimonial and documentary evidence showed that each party had agreed to receive 50% of the other's community portion of the retirement accounts. The portion that Criswell would have received from Jenkins's account was far greater than he would have received from hers. Criswell's counsel testified that she met with the parties to discuss the merits of a QDRO and followed up with Jenkins regarding fees for a separate QDRO. Criswell presented retirement statements for

both parties and an email from Jenkins providing information about his accounts necessary to draft a QDRO per the agreement. The email would have been unnecessary if the parties intended to keep their own retirement accounts rather than split them. Indulging every presumption in favor of the trial court's ruling, we hold that the trial court did not abuse its discretion in finding that Criswell's bill of review alleged a meritorious defense.

### 2.    Fraud

Next, Jenkins alleges that Criswell did not present compelling evidence to support fraud or accident. Criswell responds that she presented uncontroverted evidence of accident and fraud.

To prevail on a bill of review, a petitioner must plead and prove that she was prevented from making her meritorious defense by the fraud, accident, or wrongful act of her opponent. *See Caldwell*, 154 S.W.3d at 96. Only "extrinsic fraud" will support a bill of review.[*] *See Tice v. City of Pasadena*, 767 S.W.2d 700, 702 (Tex. 1989). Extrinsic fraud is fraud that denies a litigant the opportunity to fully litigate at trial all the rights or defenses that could have been asserted. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 752 (Tex. 2003). It occurs when a litigant has been

---

[*]    Intrinsic fraud, by contrast, "relates to the merits of the issues which were presented. . . . Within that term are included such matters as fraudulent instruments, perjured testimony, or any matter which was actually presented to and considered by the trial court in rendering the judgment assailed." *Tice v. City of Pasadena*, 767 S.W.2d 700, 702 (Tex. 1989) (orig. proceeding). Only extrinsic fraud will support a bill of review because each party must guard against an adverse finding on issues directly presented. *Id.*

misled by her adversary by fraud or deception or was denied knowledge of the suit. *Alexander*, 226 S.W.2d at 1001. A direct attack on a "judgment on the basis of extrinsic fraud is allowed because such fraud distorts the judicial process to such an extent that confidence in the ability to discover the fraudulent conduct through the regular adversarial process is undermined." *Browning v. Prostok*, 165 S.W.3d 336, 348 (Tex. 2005).

The evidence demonstrates that once Criswell's attorney became aware of the error in the divorce filing, she immediately contacted the parties to discuss a solution. It was agreed that the best solution was to file an agreed judgment nunc pro tunc. Criswell's attorney's office called and emailed Jenkins multiple times to obtain his signature. Criswell's attorney at first believed that Jenkins's job offshore caused the delay in obtaining his signature. After the deadline to file a motion for new trial had passed, Criswell and her attorney learned, from an e-filing from Jenkins's newly retained counsel, that he would not be signing the agreement. Criswell demonstrated that she had been misled by her adversary, which denied her the opportunity to fully litigate her rights. The trial court did not abuse its discretion in ruling that Jenkins's intentional delay satisfied the second requirement for a bill of review.

### 3. Due Diligence

Finally, Jenkins argues that while Criswell was diligent in attempting to secure his signature, she was not diligent in pursuing other procedural remedies. He argues that she should have filed a motion for new trial or pursued other procedural remedies despite her understanding that Jenkins would sign the agreed judgment nunc pro tunc.

The evidence reflects that the parties intended to split their retirement accounts, but the divorce decree did not reflect this agreement. When Criswell and her counsel alerted Jenkins to the error, they were led to believe that Jenkins would sign an agreed judgment nunc pro tunc. Despite numerous attempts to secure the signature, Jenkins never signed. *See King Ranch*, 118 S.W.3d at 752 (stating that extrinsic fraud denies litigant opportunity to fully litigate all her rights at trial); *Alexander*, 226 S.W.2d at 1001 (stating that extrinsic fraud includes misleading adversary by deception or fraud). Criswell did not learn that Jenkins did not intend to sign the document until after the court's plenary power had expired. *See Browning*, 165 S.W.3d at 348 (explaining that extrinsic fraud distorts and undermines judicial, adversarial process which normally affords litigants ability to discover fraudulent conduct). The trial court did not abuse its discretion in holding that Criswell established the necessary due diligence to obtain a bill of review. *See Alexander*, 226 S.W.2d at 1001.

## Conclusion

The trial court did not abuse its discretion in granting the bill of review. We affirm the judgment of the trial court.


Peter Kelly
Justice

Panel consists of Chief Justice Adams and Justices Kelly and Goodman.