**Jeanette Lloyd CRISPIN, Appellant,**

v.

**Arthur CRISPIN, Appellee.**

**No. 12320.**

Court of Civil Appeals of Texas, Austin.

Oct. 29, 1975.

Rehearing Denied Nov. 19, 1975.

David Ball, Jr., Houston, for appellant.

George E. Ramsey, III, Watkins, Ledbetter, Hayden & Ramsey, Austin, for appellee.

O'QUINN, Justice.

Jeanette Lloyd Crispin, the appellant, brought this action, in the nature of a bill of review, to set aside a property settlement approved in a prior judgment of divorce. The principal ground alleged by appellant was that her former husband, Arthur F. Crispin, ". . . set up trust funds, partnerships and other business vehicles in order to disguise, mislead and defraud Movant [appellant] of her share of their community property."

The trial court entered judgment that appellant take nothing by her suit. We will affirm the judgment of the trial court.

Appellant and appellee met in 1965, were married in 1967, and were divorced in August of 1973. Appellant previously had married a doctor in 1953, from whom she was divorced in 1963. Five children were born to that marriage. At the time of that divorce Mrs. Crispin employed attorneys both in Houston, Texas, and Phoenix, Arizona, to represent her in the property settlement and divorce proceedings. Under judgment in that case, Mrs. Crispin was awarded two homes, a Cadillac automobile, a bond, and child support and alimony allowances. Subsequently, her former husband in that marriage acquired custody of four of the five children.

After marriage to Crispin in 1967, appellant and her husband acquired a home in Spain and another home near Spicewood,

Texas, located on a tract of fifteen acres. Crispin had come to the United States from Belgium in 1952, when he founded and became president of American Steel Building Company, a connection he maintained until 1971 when he sold his interest in the business.

Appellant pleaded that during her marriage to Crispin she was told little, if anything, about Crispin's business affairs and therefore had little knowledge of her husband's financial condition. Appellant further insisted that she was allowed only $85 a week to "run the house on" and was not allowed to spend more without her husband's consent. Mrs. Crispin claimed that her husband repeatedly stated that any money they had was his separate property, and he refused to discuss financial matters with her.

Crispin brought suit in 1973 for divorce. Mrs. Crispin did not retain an attorney because, she stated, Crispin told her it would be too expensive. The record shows that Mrs. Crispin was willing for there to be a divorce and that to her money was "too secondary" for her to think of it. Crispin's counsel prepared a written property settlement agreement under which appellant relinquished her rights to the "Arthur Crispin Trust," created when Crispin sold his interest in the American Steel Building Company in 1971, which trust agreement both appellant and appellee had executed. The trust was valued at approximately $500,000. In addition, appellant conveyed her interest in the Spicewood property to Crispin pursuant to the property settlement agreement. Under the property settlement appellant received $5,000 in cash and title to a 1970 Volkswagen automobile.

Prior to executing the property settlement agreement, Mrs. Crispin spent close to half an hour reading the instrument, and later went to the courthouse where she participated in the divorce proceedings during which the trial court approved the agreement. Under questioning by the trial court, appellant stated that she understood the property settlement and agreed to it.

The record shows that part of the property agreement had been rewritten at Mrs. Crispin's request to allow additional money for child support.

During the marriage of appellant and appellee they traveled extensively, going abroad six times, and acquired a home in Spain. Appellant testified that the couple lived well, maintained a good standard of living, and that she was willing to retire to Europe with Crispin. Shortly after the couple married, Crispin adopted appellant's minor daughter of her prior marriage, and appellant agreed that Crispin was a good father. Appellant's intellectual status is established in the record by testimony that during the marriage she completed two years of college education with a grade point average of 3.5.

Appellant contends on appeal that the property settlement agreement should be set aside because Crispin's acts constituted a fraud on her property rights. She contends that Crispin's failure to inform her of the value of the property held in the trust constituted concealment of assets subject to division in the divorce action. Crispin joins issue in denying that there was any fraud on appellant, or, if fraud should be found, that appellant was negligent in failing to ascertain what assets comprised the marital estate.

■ It is settled that the petitioner in a bill of review, seeking to invoke the equity power of the court to set aside a prior judgment, must plead and prove (1) a meritorious cause of action or defense (2) which petitioner was prevented from establishing in the prior proceeding by fraud, accident, or wrongful act of the opposite party, (3) unmixed with any fault or negligence on the part of petitioner. *Gracey v. West*, 422 S.W.2d 913, 915 (Tex.Sup.1968); *French v. Brown*, 424 S.W.2d 893, 895 (Tex.Sup.1967); *Hanks v. Rosser*, 378 S.W.2d 31, 34 (Tex. Sup.1964).

■ We agree with the findings and conclusion of the trial court implicit in the

judgment that appellant as petitioner below failed to sustain the legal requirements necessary to support a bill of review.

▮▮▮▮ Appellant had the burden to show that Crispin was guilty of extrinsic fraud, as opposed to intrinsic fraud, which prevented her from asserting her right to a greater share in the property. Extrinsic fraud or deception is a wrongful act by the other party to a suit which prevents the losing party from knowing about his rights or defenses, or from having a fair opportunity to present them upon trial and fully litigate such rights. *Alexander v. Hagedorn*, 148 Tex. 565, 226 S.W.2d 996, 1001 (1950); *O'Meara v. O'Meara*, 181 S.W.2d 891, 893 (Tex.Civ.App. San Antonio 1944, writ ref.).

Appellant failed to show that Crispin by any act of his deceived or misled her, except by her general testimony that Crispin did not discuss financial matters or business operations with her. The record shows that the parties from time to time made wills affecting disposition of their property. Both before and after the child was adopted by appellee a will was made by appellant, and both parties made wills in Spain to dispose of property there in accordance with Spanish law. When the disputed trust was created in 1971, Mrs. Crispin executed the trust agreement and also made a will. Mrs. Crispin testified that she and Crispin discussed the pending sale of his business from time to time over a period of several weeks prior to the actual sale. Appellant was aware of bank accounts and maintained a separate bank account and savings fund of her own, and was authorized to draw on a joint account in a Houston bank.

Mrs. Crispin had knowledge of her husband's salary and how it was earned and paid; she knew he dealt in stocks and bonds, although she disclaimed any personal knowledge of the stock market; she knew of the proposed sale of the business before it was sold, and was aware of the consummation of that transaction when it occurred; she was cognizant of the fact that proceeds from the sale in the company were to be used to establish a trust upon which the couple was to live, and she later executed the trust agreement lodged with the Southern National Bank in Houston, where the joint account was kept; she executed joint income tax returns filed by the parties for six years, from 1967 through 1972, which stated Crispin's earnings for each year.

After suit for divorce was filed, Mrs. Crispin objected to phraseology in the waiver of citation furnished her, and after consultation with an attorney, she obtained a revision of the waiver to insure that trial would not be held without notice to her. Later Mrs. Crispin, after carefully reading the property settlement agreement for twenty to thirty minutes, executed the instrument, and then went to the courthouse where she participated in the divorce hearing. The property settlement instrument, with respect to the trust, provided: "Petitioner [Crispin] shall take as his separate property all interest in and to a certain Trust Agreement dated March 17, 1971, known as the Arthur F. Crispin Trust. By the execution of this instrument, Respondent [appellant] specifically relinquishes, releases, and divests any and all right, title, and interest which she may have, or have had, if any, in and to the aforementioned Arthur F. Crispin Trust, dated March 17, 1971."

Although Crispin conceded at the hearing on the bill of review that he did not disclose to the court during the divorce trial all assets in the trust, the record shows that Mrs. Crispin knew when she joined Crispin in establishing the trust in 1971 that the corpus of the trust was expected to produce interest sufficient for the couple to live on it and perhaps retire in Europe.

Appellant relies on the "law and doctrine of the *Lawler* case" in contending that Crispin was guilty of extrinsic fraud. *Dudley v. Lawler*, 468 S.W.2d 160 (Tex.Civ.App. Waco 1971, no writ). Appellant argues that "if the representations of the husband are

false (whether intentional, unintentional or accidental) and are relied upon by the wife there is a presumption of extrinsic fraud." The general rule stated by appellant has support in decisions by Texas courts, but reliance on *Lawler* is misplaced. The appeal in *Lawler* was from a summary judgment that the wife take nothing. The appellate court reversed the judgment and remanded the case because the court found "there are issues of fact, including fraud, which should be tried to a jury." The expressions of the court regarding the husband's fiduciary duty to his wife were *dicta* and lack the force of an adjudication. *Grigsby v. Reib*, 105 Tex. 597, 153 S.W. 1124, 1126 (1913); *State v. Valmont Plantations*, 346 S.W.2d 853, 878 (Tex.Civ.App. San Antonio 1961, aff'd, opinion adopted, 163 Tex. 381, 355 S.W.2d 502).

The record is devoid of evidence that Crispin made representations, false or otherwise, concerning the nature, extent, or value of the property acquired by the couple during their marriage. It is reasonably clear from the record that Mrs. Crispin knew, from the manner and standard of their living, that the business Crispin had founded and later sold to provide assets for the trust was something more than insubstantial. Crispin had mentioned to his wife debts and mortgage obligations, but the record does not show that these representations were in fact untrue or misleading.

If there exists in the record more than a scintilla of evidence that the acts or statements of Crispin constitute a basis for extrinsic fraud, we are brought to the question of whether such conduct was unmixed with fault or negligence on the part of appellant. Appellant argues that because her portion of the estate under the property settlement was so small, as compared with the amount received by Crispin, that an injustice resulted.

In an action on bill of review a showing only of injustice done by the prior judgment is insufficient. The Supreme Court stated the rule in 1883 that: "It must further distinctly and clearly appear that this result was not caused by any inattention or negligence on the part of the person aggrieved, and he must, among other matters, show a clear case of diligence and of merit to obtain the interference of a court of equity in his behalf at such a stage of the case." *Johnson v. Templeton*, 60 Tex. 238, 239 (1883).

This Court in 1965 followed *Johnson v. Templeton* and applied the doctrine in an action by a wife to set aside a prior property settlement incorporated in a judgment of divorce. *Neill v. Neill*, 386 S.W.2d 642, 646 (Tex.Civ.App. Austin 1965, writ dism'd). In that case, as in the cause now on appeal, the wife indicated to the court trying the divorce that she understood the property settlement agreement and was satisfied with it, and, further, assented to the divorce.

Mrs. Crispin, like the wife in *Neill*, made no effort to ascertain the extent of property settled in the agreement, although Mrs. Crispin was acquainted with persons connected with the Houston bank where the trust agreement was signed by her and where she and her husband maintained a joint account. Mrs. Crispin had been through an earlier divorce and property settlement in her first marriage. She conceded in the bill of review hearing that she knew she could have employed counsel in the Crispin divorce action and that attorney's fees would be taxed without burden to her. She testified that after her first marriage ended she had on two occasions employed counsel in court contests with her former husband, once over child support and once on custody of the children.

The record, as already observed, indicates clearly that Mrs. Crispin is a woman of intelligence and experience and possesses sufficient resourcefulness to discover facts and assert her rights when the occasion demands such action. It would have taken very little effort on her part for Mrs. Crispin to ascertain the net value of the marital property prior to the settlement. She conceded that she was under no duress to sign

the agreement, and that, after signing the agreement, went to the courthouse where she assured the judge trying the divorce that she understood and was satisfied with the property settlement the court approved in the judgment.

Appellant's failure to seek the information she now contends was withheld from her constitutes a bar to the relief she seeks in this action in bill of review.

The judgment of the trial court is affirmed.