# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-03-00630-CV

---

**William Cox Miller, Appellant**

**v.**

**Helen Kay Ludeman, Appellee**

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT**
**NO. 98-11630, HONORABLE MARGARET COOPER, JUDGE PRESIDING**

---

## O P I N I O N

This case arose when appellee, Helen Kay Ludeman, brought an enforcement action against appellant, William Cox Miller, to recover $52,000 that Miller owed her under the divorce decree that had dissolved their marriage three years earlier. In response, Miller sought to overturn the underlying divorce decree through an equitable bill of review. Miller asserted that the divorce decree was the product of extrinsic fraud committed by Ludeman and that, under community property law, he was entitled to between one and two million dollars from Ludeman. The district court granted summary judgment in favor of Ludeman. Miller now appeals. We affirm the judgment.

## BACKGROUND

Miller and Ludeman were married in 1993. Each owned successful businesses that they had built before their marriage. In 1998, Miller informed Ludeman that he wanted to live six

months of the year in a spiritual community in India. Ludeman did not want to leave her business in order to join him. Ultimately, the couple decided that it would be best to end their marriage. Miller and Ludeman both characterize this decision as mutual and amicable. Because the couple was on good terms and believed there was little dispute regarding their property division, they used the same attorney, Harry Whittington.

On September 15, 1998, the couple, without the guidance of legal counsel, drafted a document that outlined a proposed agreed division of their marital property. The document purported to be the "split of property and assets" contingent upon the couple divorcing by the end of 1998. On September 21, 1998, the couple drafted a second document, intended to supercede the first, that again divided the couple's property. The second document did not contain the same contingency language regarding divorce. In November, Miller contacted Ludeman, told her that he was not satisfied with the property division they had made in the September 21 agreement, and informed Ludeman that he wanted to renegotiate. Ludeman refused. Miller then stated that he would allow the court to decide the property division.

After this discussion, Ludeman called Miller and told him that she had discussed their property with their lawyer, Whittington, and he had advised her regarding definitions of the types of property that comprised community property. Ludeman represented that she had applied these definitions to the couple's property. Subsequently, Ludeman sent Miller a letter and a chart indicating how "likely" she believed it was, in light of the definitions, that a court would classify particular items of their property as community property versus separate property. Ludeman made several equivocal statements in the letter and accompanying property chart as to the accuracy of her determinations. The chart itself is divided into columns, each headed by a percentage "likelihood"

2

that a court would award Ludeman the property in that column. Ludeman ended the correspondence by stating, "I have done my very best to use Harry's definitions of what would be considered community property."

Following this exchange, Miller and Ludeman drafted a Final Agreement Incident to Divorce which incorporated, with few differences, the September 21 agreement. The couple finalized their divorce in December 1998. Both Miller and Ludeman have since remarried.

Whittington denies that he ever spoke with either party about property division or even about community property definitions in the abstract. The "property chart" that Ludeman drafted characterized several parcels of the couple's property as her separate property that, according to general family law principles, would actually have been presumptively considered community property. *See* Tex. Fam. Code Ann. § 3.002 (West 1998).

Under the divorce decree, Miller was to pay Ludeman $52,000 within three years. When he did not pay, Ludeman brought an enforcement action against Miller. In response, Miller brought an equitable bill of review asserting that the divorce decree was the product of extrinsic fraud perpetrated by Ludeman. Miller argued that Ludeman misrepresented that her categorizations of their property had been based on Whittington's legal advice, and that these actions constituted extrinsic fraud that had prevented him from going to court and receiving his fair share of the marital estate. Miller asserted that the divorce decree should be overturned in its entirety. Thus, he argued, he did not owe Ludeman the $52,000 and, according to community property law, he was entitled to between one and two million dollars from Ludeman.

The district court granted a traditional summary judgment in favor of Ludeman, denying Miller's bill of review. This appeal ensued.

**DISCUSSION**

**Standard of Review**

The standards for review of a traditional summary judgment are well established: the movant must show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law; in deciding whether there is a disputed material fact issue precluding summary judgment, the court must take evidence favorable to the nonmovant as true; and the court must indulge every reasonable inference in favor of the nonmovant and resolve any doubts in the nonmovant's favor. *See* Tex. R. Civ. P. 166a(c); *Pustejovsky v. Rapid-Am. Corp.*, 35 S.W.3d 643, 645-46 (Tex. 2000); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985). Because the propriety of a summary judgment is a question of law, we review the trial court's decision *de novo*. *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex. 1994).

**Bill of Review**

A bill of review is an independent, equitable action to set aside a judgment that is no longer appealable or subject to a motion for new trial. *See Axelrod R & D, Inc. v. Ivy*, 839 S.W.2d 126, 128 (Tex. App.—Austin 1992, writ denied). In general, for a party to successfully invoke a bill of review, he must allege and prove that (1) he had a meritorious defense to the cause of action alleged to support the judgment, (2) which he was prevented from making because of fraud, accident, or wrongful act of the opposite party, (3) that was untainted by any fault or negligence of his own. *See King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 752 (Tex. 2003); *Alexander v. Hagedorn*, 226 S.W.2d 996, 998 (Tex. 1950). All three elements must be met before a bill of review can be granted. *See id.* With regard to the third element, the Texas Supreme Court has stated: "It must further

4

distinctly and clearly appear that this result was not caused by any inattention or negligence on the part of the person aggrieved, and he must, among other matters, show a clear case of diligence and of merit to obtain the interference of a court of equity in his behalf at such a stage of the case." *Johnson v. Templeton*, 60 Tex. 238, 239 (1883).

Because of the critical importance of finality in judgments, bills of review "are always watched by courts of equity with extreme jealousy, and the grounds on which interference will be allowed are narrow and restricted." *Hagedorn*, 226 S.W.2d at 998 (quoting *Harding v. W.L. Pearson & Co.*, 48 S.W.2d 964, 965-66 (Tex. Comm'n App. 1932, holding approved)).

**Application**

Miller asserts that he satisfied all three elements to sustain his bill of review. Because the third element, absence of negligence, is alone dispositive, we need only address that issue. *State v. 1985 Chevrolet Pickup Truck*, 778 S.W.2d 463, 464 (Tex. 1989). Because we are reviewing a summary judgment that disposed of a bill of review, we must determine whether there is no genuine issue of material fact that Miller was not negligent—in other words, whether Miller was negligent as a matter of law in not asserting his claims for community property in court. *See McRoberts v. Ryals*, 863 S.W.2d 450 (Tex. 1993).[1]

---

[1] There is evidence that, before the decree was entered, Miller asked Whittington whether the settlement was fair and also more specifically about the community property discussions Whittington had with Ludeman. Miller disputes what was said during the conversation and even whether the conversation occurred before the decree was entered. We will assume the facts most favorable to Miller in our determination. Even if Miller discussed the issue with Whittington and Whittington gave Miller inaccurate counsel, which we do not determine actually occurred, that does not aid Miller here because "allegations of fraud or negligence on the part of a party's attorney are insufficient to support a bill of review." *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 752 (Tex. 2003).

This case is closely akin to *Crispin v. Crispin*, 529 S.W.2d 310 (Tex. App.—Austin 1975, no writ). In *Crispin*, the wife brought a bill of review asserting that her husband had failed to disclose his financial condition before she agreed to the divorce. *Id.* The husband retained counsel but the wife did not. *Id.* The wife had been through an earlier divorce, was intelligent, had ample resources, and had ready access to the information that her husband did not disclose. *Id.* We concluded that because she had made "no effort to ascertain the extent of property settled in the agreement . . . [her] failure to seek the information she now contends was withheld from her constitutes a bar to the relief she seeks in this action in bill of review." *Id.*

We see little to distinguish our analysis in *Crispin* from the case before us. There is no dispute that Miller is a sophisticated party who had ample financial resources and could easily have verified the accuracy of Ludeman's representations. Unlike the wife in *Crispin*, Miller had access to an attorney whom he could have easily contacted. Also, Miller had been married and divorced previously. He was thus familiar with the legal process and ramifications of divorce.

We acknowledge that there is evidence that Ludeman affirmatively represented to Miller that she had discussed community property issues with their joint lawyer and that her determinations of the character of their property were based on that conversation. Even if Miller's reliance on the representations of an adverse party alone did not constitute negligence, Miller was negligent in relying upon such equivocal statements of law as Ludeman made. Ludeman prefaced her conclusions with equivocal statements such as "I believe it is most likely" and "some of this might be arguable." Under these facts, the equivocal statements themselves and the ease with which Miller could have investigated Ludeman's representations lead us to conclude that Miller cannot

6

show that his failure to bring his legal claims was "untainted by any fault or negligence of [his] own." *Hagedorn*, 226 S.W.2d at 998.

Miller tries to minimize his failure to investigate Ludeman's representations by asserting that, as his spouse, Ludeman had a fiduciary duty to be truthful. He extrapolates that such a duty forecloses any negligence on his part in failing to diligently investigate Ludeman's equivocal assertions.

Husbands and wives generally owe a fiduciary duty to one another. *See Schlueter v. Schlueter*, 975 S.W.2d 584, 589 (Tex. 1998); *Matthews v. Matthews*, 725 S.W.2d 275, 279 (Tex. App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.). Miller concedes that adverse parties who have retained professional counsel, including husbands and wives in a suit for divorce, do not owe fiduciary duties to one another. *See Boyd v. Boyd*, 67 S.W.3d 398, 405 (Tex. App.—Fort Worth 2002, no pet.). Miller argues, however, that the fiduciary duty does not end until each party is represented by independent counsel. He points out that he and Ludeman shared a lawyer in their divorce, and adds that, because he and his wife were on good terms and both testified they trusted one another, Ludeman owed Miller a fiduciary duty. We will assume without deciding that Ludeman owed Miller a fiduciary duty. Even if such a duty existed, it would not obviate Miller's negligence as it relates to a bill of review proceeding.

We are unaware of any case that supports Miller's assertion that the existence of a fiduciary duty may foreclose any negligence by the party bringing a bill of review. Instead, the cases addressing bills of review have discussed fiduciary duties only in regard to the second element of the bill of review analysis, extrinsic fraud. Extrinsic fraud and negligence are separate issues: "Where the presentation of [a] defense was prevented by fraud, accident, or act of the opposing

7

party, it must be shown that there was no fault or negligence by the party against whom the judgment was rendered." *Crouch v. McGaw*, 138 S.W.2d 94 (Tex. 1940); *see also, e.g.*, *Nelson v. Williams*, No. 10-01-0027-CV, 2004 Tex. App. WL 585390 (Tex. App.—Waco Mar. 24, 2004, no pet. h.); *Wise v. Fryar*, 49 S.W.3d 450 (Tex. App.—Eastland 2001, pet denied); *Forney v. Forney*, 672 S.W.2d 490 (Tex. App.—Houston [1st Dist.] 1983, writ dism'd). In *Crispin*, the husband admitted that he had withheld financial information from the wife, constituting fraud, but we nonetheless determined that this wrongdoing did not excuse the wife's failure to seek the information at the time of the divorce. *Crispin*, 529 S.W.2d at 314. Finally, we reiterate that bills of review "are always watched by courts of equity with extreme jealousy, and the grounds on which interference will be allowed are narrow and restricted." *Hagedorn*, 226 S.W.2d at 998 (quoting *Harding*, 48 S.W.2d at 965-66). We conclude that even if there was a fiduciary duty between Miller and Ludeman after they filed for divorce, that does not excuse Miller's lack of diligence in investigating the validity of the equivocal assertions of law and failing to assert his rights.

## CONCLUSION

We affirm the district court's grant of summary judgment in favor of Ludeman.

_____

Bob Pemberton, Justice

Before Justices Kidd, B. A. Smith and Pemberton

Affirmed

Filed:   June 10, 2004

8