# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00152-CV

**Amado Aguilar, Jr., Appellant**

**v.**

**Texas Department of Family and Protective Services, Appellee**

## FROM THE DISTRICT COURT OF BELL COUNTY, 146TH JUDICIAL DISTRICT NO. 226,232B-B, HONORABLE RICK MORRIS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Amado Aguilar appeals from an order denying his petition for bill of review, in which he sought to overturn an order terminating his parental rights to his five children. On appeal, Aguilar argues that the trial court abused its discretion in denying his bill of review because he did not have legal notice of the prior proceedings and therefore was prevented, through no fault of his own, from presenting a meritorious defense. Because we hold that Aguilar had legal notice of the termination proceedings and that his own negligence contributed to his failure to present a meritorious defense, we affirm the trial court's order.

## BACKGROUND

Aguilar filed his petition for bill of review in connection with a termination proceeding brought by the Department of Family and Protective Services (the "Department"), seeking to terminate Aguilar's parental rights to his five children, as well as those of the

children's mother, M.M.[1]  The department filed its original petition on April 27, 2006, alleging, among other things, that M.M. had physically neglected the children and that three of the Aguilar children had been physically abused by M.M.'s boyfriend.[2]  At an ex parte emergency hearing, the trial court approved the removal of the children and scheduled a show cause hearing for May 10, 2006, which was subsequently rescheduled for May 3.

The Department initially attempted to serve Aguilar at his grandmother's address in Belton, Texas, but this citation was returned unserved on May 2, 2006.  The officer attempting service checked the "Moved - No Forwarding Address" box on the citation and noted "Robstown, TX, Address Unknown" in the space for a new address.  On May 3, however, Aguilar appeared in person at the show cause hearing and requested additional time to hire an attorney.  The court granted his request and rescheduled the show cause hearing for May 17, 2006.  Aguilar signed the scheduling order resetting the hearing and provided the court with new contact information, giving his mother's address in Robstown, Texas.

Aguilar appeared at the May 17 show cause hearing and again asked the court for more time to seek an attorney.  The court rescheduled the show cause hearing for May 31 and set a status hearing for June 14.  Aguilar again signed the scheduling order setting both hearings.

---

[1] Texas Rules of Appellate Procedure 9.8(b)(2) (effective Sept. 1, 2008) authorizes appellate courts to refer to a minor's parent by an alias in order to protect a minor's identity.

[2] The grounds for filing against Aguilar were that he knowingly placed or knowingly allowed the children to remain in the harmful environment created by M.M. and her boyfriend—conditions or surroundings which endangered the physical or emotional well-being of the children.  *See* Tex. Fam. Code Ann. § 161.001(1)(D),(N) (West Supp. 2008).

2

On May 30, the citation sent by the Department to Aguilar's mother's home in Robstown was returned unserved and unclaimed. The next day, Aguilar appeared in person and testified at the show cause hearing. At the hearing, the court warned Aguilar that the proceedings might end in the termination of his parental rights. The court ordered that the children remain in foster care, that Aguilar and M.M. participate in parenting skills classes, therapy sessions, and counseling, and that Aguilar pay $360 a month in child support to the foster mother. The court then set a status hearing for June 21.

At the show cause hearing, Aguilar submitted an application for a court-appointed attorney. On the application, Aguilar listed his grandmother's address in Belton. The court granted the application and provided Aguilar with his attorney's name and contact information. At the hearing on the petition for bill of review, Aguilar testified that he phoned his attorney "at least twice a week or once a week for about two weeks" in an attempt to reach him, but was unsuccessful. After that, according to Aguilar, he became busy caring for his ailing grandmother and stopped trying to reach his attorney. Aguilar's attorney, however, testified at the bill of review hearing that he has no record of having ever received any telephone calls or messages from Aguilar.[3]

The court first notified Aguilar's attorney of the status hearing scheduled for June 21, and a week later notified him of one scheduled for June 14. Aguilar's attorney appeared on June 14,

---

[3] Aguilar acknowledged that he "did get one paper" that his attorney mailed to his grandmother's house, but testified that he did not personally receive it "until about December," because he was no longer living at that address. Aguilar further testified that his cousins, who were staying at his grandmother's house, "would just grab the mail and put it inside. They would never check it." It is not clear when or where Aguilar moved when he left Belton. While Aguilar testified on direct examination that he was living with his girlfriend in Temple in June of 2006, he testified on cross examination that they moved to Palestine in April of 2006. In any event, there is nothing in the record to indicate that, after leaving Belton, Aguilar provided the trial court, the Department, or his attorney with a new address at which he could be reached.

although Aguilar was not present.[4] The court held the status hearing and set a permanency hearing for September 27. Aguilar's attorney signed the scheduling order.

On September 15, the department issued its permanency progress report. The report noted that neither Aguilar nor M.M. had "made any progress toward mitigating the causes for the children's removal" nor complied with the Department's family service plan.[5] The report stated that the Department had filed a petition requesting termination of parental rights and that the permanency goal was for the children to be adopted by their foster parents. According to the report, copies were mailed to Aguilar, at his grandmother's Belton address, and to his attorney. At the permanency hearing on September 27, the court found continued placement with the foster mother to be in the children's best interest and approved the Department's goal of adoption. Aguilar did not attend the permanency hearing, but Aguilar's attorney appeared and signed the scheduling order setting the final hearing for December 6, 2006. The next day, Aguilar's attorney was served with the Department's first amended petition.

---

[4] Aguilar testified in the bill of review hearing that the May 31 hearing was the last one he attended.

[5] More specifically, the report stated that Aguilar had not completed the required parenting skills classes, individual counseling, psychological evaluation, random drug testing, or alcohol and drug counseling program, and that he had not made contact with the Department since the May 31 hearing. Due to Aguilar's non-cooperation, his visits with the children were suspended. Aguilar testified that he learned that his visits had been suspended when he attended one of the children's football practices and the foster mother told him that he "couldn't see [his] kids no more because [he] wasn't doing [his] classes."

4

At the final hearing, the court terminated the parental rights of Aguilar and M.M.[6] While Aguilar was not present at the final hearing, his attorney appeared on his behalf. Although Aguilar testified that he did not know about the final hearing, his sister was in attendance and his mother admitted that she had known about the hearing in advance. According to Aguilar, his mother told him approximately a week after the hearing that his rights had been terminated. Aguilar testified that, until discovering his rights had been terminated, he had believed that M.M. was complying with her service plan, that the children would be returned to M.M., and that he would have access to the children through her. Upon learning that Aguilar's and M.M.'s rights had been terminated, Aguilar's mother spoke with Aguilar's attorney and asked him to represent her in her attempt to acquire custody of the children. Aguilar, on the other hand, did not attempt to contact his attorney, nor did he seek a new trial or an appeal. On October 27, 2007, Aguilar filed a petition for bill of review, seeking to overturn the judgment terminating his parental rights. After a hearing, the trial court denied Aguilar's petition, and this appeal followed.

Because the timing of hearings in the termination proceedings and any notice Aguilar may have received of those hearings is key to the outcome of this case, the chronology of relevant events is set forth below:

---

[6] The Department presented evidence that Aguilar had not completed the required parenting skills classes, individual counseling, psychological evaluation, random drug testing, or alcohol and drug counseling program. In addition, Aguilar had not made contact with the Department since the May 31 hearing.

The court found that Aguilar (1) knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endanger the physical or emotional well-being of the children and (2) constructively abandoned the children who were in the temporary managing conservatorship of the Department of Family and Protective Services for not less than six months. *See* Tex. Fam. Code Ann. § 161.001(1)(D),(N).

04/27/2006    Original termination petition filed by the Department; ex parte hearing held

05/02/2006    Citation to Amado Aguilar at grandmother's address in Belton, Texas returned unserved with the notation, "Robstown, TX, address unknown"

05/03/2006    Aguilar appeared, requested extension of time to find an attorney; show cause hearing rescheduled for May 17; status hearing set for June 14; Aguilar signed the scheduling order

05/04/2006    Citation issued to Aguilar at mother's address in Robstown, Texas

05/17/2006    Aguilar appeared, requested another extension of time to find an attorney; show cause hearing rescheduled for May 31; Aguilar signed the scheduling order

05/30/2006    Citation to Robstown address returned unserved and unclaimed

05/31/2006    Show cause hearing held; permanency progress hearing set for June 21; Aguilar appeared in person, applied for a court-appointed attorney, gave his grandmother's address in Belton, and signed the scheduling order; the trial court appointed an attorney for Aguilar and provided Aguilar with attorney's name and contact information.

06/02/2006    Aguilar's attorney notified of June 21 status hearing

06/09/2006    Aguilar's attorney notified of June 14 status hearing

06/14/2006    Status hearing; Aguilar was not present, but appeared through his attorney; Aguilar's attorney signed the scheduling order setting a permanency hearing for September 27

09/27/2006    Permanency hearing; Aguilar was not present, but appeared through his attorney; Aguilar's attorney signed the scheduling order setting the final hearing for December 6

09/28/2006    Aguilar's attorney served with the Department's first amended petition

12/06/2006    Final hearing; Aguilar was not present, but appeared through his attorney; Aguilar's parental rights were terminated

01/05/2007    Termination decree entered

10/26/2007    Petition for bill of review filed

**DISCUSSION**

A bill of review is an equitable proceeding, brought to overturn a judgment that is no longer subject to challenge by a motion for a new trial or an appeal. *King Ranch v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003); *Baker v. Goldsmith*, 582 S.W.2d 404, 406 (Tex. 1979). In light of the "fundamental policy that judgments must become final at some point," a person who seeks to set aside a final judgment through a bill of review must meet a high burden. *King Ranch*, 118 S.W.3d at 751. A mere injustice is not sufficient to justify relief. *Crouch v. McGaw*, 138 S.W.2d 94, 96 (Tex. 1940); *Nguyen v. Intertex, Inc.*, 93 S.W.3d 288, 293 (Tex. App.—Houston [14th Dist.] 2002, no pet.).

Ordinarily, in a bill of review a plaintiff must plead and prove: (1) a meritorious defense against the initial judgment; (2) that the plaintiff was prevented from presenting this defense by the fraud, accident, or wrongful act of the opposing party or by official mistake; and (3) that the failure to present the defense was not due in any part to the plaintiff's own negligence or fault. *Caldwell v. Barnes*, 975 S.W.2d 535, 537 (Tex. 1998). However, when a plaintiff claims, as Aguilar does in the present case, that he did not receive notice of the prior proceedings, then he is relieved of the duty to plead and prove the first two elements. *Peralta v. Heights Med. Ctr., Inc.*, 485 U.S. 80, 86-87 (1988) (constitutional due process relieves no-notice plaintiff of duty to plead and prove meritorious defense); *Caldwell*, 975 S.W.2d at 537 (no duty to plead and prove fraud, accident, or official mistake where plaintiff did not receive notice). In addition, lack of notice

7

conclusively establishes the third and final element—that the failure to present a defense was not due to the plaintiff's own negligence or fault. *Caldwell*, 975 S.W.2d at 537; *Interaction, Inc. v. State*, 17 S.W.3d 775, 778 (Tex. App.—Austin 2000, pet. denied).

We review the trial court's decision to deny a bill of review for an abuse of discretion. *Interaction, Inc.*, 17 S.W.3d at 778. A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner without reference to guiding rules or principals. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). Where, as here, the trial court did not file findings of fact and conclusions of law, the judgment will be sustained on any legal theory supported by the evidence. *Nguyen*, 93 S.W.3d at 293-94.

Aguilar argues that his petition for bill of review should have been granted because he was not personally served with citation and therefore did not have notice of the termination proceedings. While it is true that both of the citations issued to Aguilar were returned unserved, Aguilar appeared in person three times—on May 3, 2006, and May 17, 2006, to request additional time to seek an attorney, and on May 31, 2006, to testify at the show cause hearing and to file an application for a court-appointed attorney. At each of these appearances, Aguilar signed the scheduling order setting the next hearing. In addition, Aguilar's attorney appeared at every hearing following his appointment on May 31, including the final hearing at which Aguilar's parental rights were terminated. The Texas Family Code provides that citation in a suit affecting the parent-child relationship shall be served as in other civil cases. Tex. Fam. Code Ann. § 102.009(c) (West Supp. 2008). An appearance in person, or by attorney, in open court has the "same force and effect" as proper service. Tex. R. Civ. P. 120. Because Aguilar appeared both in person and by attorney, he did have legal notice of the proceedings. Therefore, Aguilar must prove all three

8

elements of the traditional bill of review test in order to succeed on his challenge. *See Caldwell*, 975 S.W.2d at 537.

Aguilar fails the second and third prongs of the bill of review test because he cannot show that his failure to present a meritorious defense was due to the fraud, accident, or wrongful conduct of the Department, rather than his own negligence.[7] Aguilar claims that the Department and the trial court wrongfully mailed the notices and permanency reports to the incorrect address. However, both the Department and the trial court used the most recent address on file—in Belton, Texas—as listed on his application for a court-appointed attorney. The Department and trial court's notices to the most recent address Aguilar provided are not evidence of wrongful conduct or mistake of the court.[8]

---

[7] Because Aguilar fails the second and third prongs, we need not address the first prong of the test. It is worth noting, however, that while Aguilar testified before the trial court that he would have presented a meritorious defense had he participated in the initial hearings, he failed to plead and prove that defense to the trial court. Aguilar argues on appeal that he never received a copy of the service plan, and thus should be excused for not completing the services. The record, however, reflects that Aguilar was aware of the plan's requirements and of his own non-compliance.

Aguilar's only defense to the charge that he constructively abandoned his children by leaving them in the care of the Department for six months was that when the children lived with their mother, he would pick them up for the holidays and attend their football games and practices. Given the arguments and evidence before the trial court, it could have reasonably determined that Aguilar failed to prove a meritorious defense.

[8] Aguilar also argues that he was prevented from presenting his defense by fraud and/or wrongful conduct on the part of M.M. and his own attorney.

Aguilar claims he was misled by M.M.'s false claim that she was complying with her service plan and would therefore regain custody of the children. However, the bill of review test is whether petitioner was prevented from presenting a meritorious defense "by the fraud, accident, or wrongful act of his or her *opponent*" or by official mistake. *King Ranch v. Chapman*, 118 S.W.3d 742, 752 (Tex. 2003) (emphasis added); *see also Hanks v. Rosser*, 378 S.W.2d 31, 35 (Tex. 1964). M.M. was a co-respondent in the termination proceeding; the Department was the opposing party.

On the contrary, the fact that the Department and the trial court sent the materials to an incorrect address is actually evidence of Aguilar's own negligence. Aguilar provided the Court with the Belton address. Further, he was not even living at the Robstown address he claims the court and Department should have been using as, according to his testimony, he had moved during the course of the termination proceedings without notifying the court. The trial court could have reasonably determined that Aguilar's failure to provide a correct mailing address at which he could in fact reliably receive mail constituted negligence or fault on his part. *Cf. Campus Invs., Inc. v. Cullever*, 144 S.W.3d 464, 466 (Tex. 2004) (failure to update addresses as required by statute is negligence barring relief by bill of review); *Mathews v. Harris Methodist*, 834 S.W.2d 582, 584-85 (Tex. App.—Fort Worth 1992, pet. denied) (attorney's failure to update address with court is negligence barring relief by bill of review).

Aguilar's failure to exercise due diligence in pursuing all available legal remedies is further proof of his negligence. *See Miller v. Ludeman*, 150 S.W.3d 592, 595-96 (Tex. App.—Austin 2004, no pet.). The record before us reflects that Aguilar testified at the show cause hearing, was ordered to pay child support and to complete the courses recommended in the Department's family service plan, and then did not contact the Department or the court again. Aguilar moved during the course of the proceedings, yet continued to use his grandmother's address, where he was not living and where no one was regularly checking the mail. Furthermore, he only

Aguilar also argues that his failure to present a defense was due to his inability to get in touch with his attorney, and his attorney's failure to reach him. Because Aguilar's attorney is an officer of the court, his conduct can be the basis for granting a bill of review—but only if such conduct rises to the level of betrayal of the client. *See Gracey v. West*, 422 S.W.2d 913, 917-18 (Tex. 1968). Aguilar's allegations do not constitute betrayal by his attorney; they are at most allegations of negligence, and negligence on the part of his attorney is not sufficient to satisfy this element of the bill of review test. *See id.* at 916, 918.

attempted to reach his attorney two to four times and failed to appear at any hearing after his attorney was appointed. In addition, Aguilar testified that he learned within a week of the final hearing that his rights had been terminated, yet he did not attempt to contact his attorney, file a motion for a new trial, or seek an appeal. Instead, Aguilar waited ten months to file a petition for bill of review.

Due diligence is that standard of care "which prudent and careful men would ordinarily use in their own cases of equal importance." *In re A.L.H.C.*, 49 S.W.3d 911, 916 (Tex. App.—Dallas 2001, pet. denied). The trial court would not have been unreasonable in assuming that a prudent and careful father, who knew there was a case pending that could terminate his parental rights, would have participated in the required services, provided the court his correct address, been more persistent in trying to reach his attorney, and attended every hearing of which he had actual notice. Further, it could have determined that Aguilar failed to exercise due diligence when he failed to challenge the termination through a motion for a new trial or an appeal, both of which were still available to him when he learned of the termination. *See Gold v. Gold*, 145 S.W.3d 212, 214 (Tex. 2004) ("If a motion to reinstate, motion for new trial, or direct appeal is available, it is hard to imagine any case in which failure to pursue one of them would not be negligence.").

Because Aguilar received legal notice of the termination proceedings, he had to plead and prove all three elements of the traditional bill of review test: (1) a meritorious defense; (2) which he was prevented from making by fraud, accident, or wrongful act of the opposing party, or by official mistake; and (3) that his own fault or negligence did not contribute to his failure to present the defense. The trial court could have reasonably concluded that Aguilar's failure to present a meritorious defense was the result of his own negligence, rather than any fraud, accident, or wrongful act of the opposing party. Thus, Aguilar is ineligible for relief by bill of review.

11

**CONCLUSION**

Because we have determined that the trial court did not err in denying Aguilar's petition for bill of review, we affirm the trial court's order.

_____

Diane M. Henson, Justice

Before Justices Patterson, Waldrop and Henson

Affirmed

Filed:   October 31, 2008

12