

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| THE STATE OF TEXAS AND TEXAS DEPARTMENT OF TRANSPORTATION, | § | No. 08-18-00017-CV |
| | § | Appeal from the |
| Appellants, | | |
| v. | § | 384th District Court |
| RAFAEL NAVARRETTE, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 2017DCV3084) |

## **O P I N I O N**

This is an interlocutory appeal from the trial court's denial of a motion to dismiss a bill of review. In a prior suit, Appellee Rafael Navarrette asserted claims against the State of Texas and Texas Department of Transportation (collectively, "TXDOT"), the County of El Paso, and A.S. Horner, Inc. ("Horner"). The trial court granted TXDOT's plea to the jurisdiction and dismissed Navarrette's claims against it under TEX. CIV. PRAC. & REM. CODE ANN. § 101.101 for failure to provide statutory notice of claim. Navarrette later filed a petition for bill of review contending he had acquired newly-discovered evidence—during discovery of his remaining claims—establishing that TXDOT had actual notice of his claim. TXDOT moved to dismiss the bill of review again on the ground that the trial court lacked jurisdiction, but this time the trial court denied its motion. Concluding that the trial court erred by denying TXDOT's motion to dismiss, we reverse and

render judgment dismissing the bill of review.

## BACKGROUND

Rafael Navarrette sustained personal injuries on June 2, 2014, when he fell from a cement catwalk on a highway overpass while performing duties as a firefighter-EMT of the El Paso Fire Department. Assigned to Rescue Unit 6, Navarrete responded to an automobile accident on an overpass of Loop 375, which had occurred at about 2:30 a.m. On arrival to the scene, Navarrette learned a car with a flat tire had pulled over to the side of the overpass, and while the tire was being changed, another driver struck the car and its occupants. Navarrette further learned there were three critical patients with life threatening injuries at the scene. Two of the patients struck by the other vehicle were ejected up and over a cement wall barrier landing on the other side on a catwalk or drainage swale of the overpass. The area cemented was *not* envisioned by TXDOT to serve as a walkway. As Navarrette carried a wooden backboard to assist a young lady with a severely injured leg, he fell from the overpass falling twenty to thirty feet to the ground below.

On September 18, 2015, Navarrette filed suit asserting claims of premises liability and negligence against TXDOT and the County of El Paso pursuant to the Texas Tort Claims Act ("TTCA"). Navarrette factually described that "[w]hile between the barricades, on a defectively designed and installed cement catwalk without restraining railings he fell 20 to 30 feet through a 3 1/2 or 4 feet opening." As premises liability, Navarrette alleged he suffered injuries "caused by a dangerous condition on the road/personal property of Defendants, which Defendants knew or, in the exercise of ordinary care, should have known existed." More specifically, he asserted that TXDOT "negligently caused or negligently permitted such condition to exist and negligently failed to correct the condition and failed to warn Plaintiff of the dangerous condition of the premises,

2

despite the fact that Defendants, their agents, servants and employees knew, or in the exercise of ordinary care, should have known of the existence of the condition and that there was a likelihood of someone being injured as happened to Plaintiff." Respecting his alternative theory of negligence, Navarrette alleged TXDOT failed to inspect the catwalk in order to discover the dangerous condition, failed to insure the catwalk design was safe, failed to maintain the catwalk, failed to maintain, repair, construct and design the bridge and catwalk safely, and failed to correct the dangerous condition which was created by the defendants. Later, Navarrette amended his petition to add defendant A.S. Horner, Inc., who is the contractor who constructed the overpass.

In his petition in the original suit, Navarrette alleged that he gave TXDOT notice of claim pursuant to the TTCA on May 19, 2015, nearly a year after his accident. That notice was in the form of a letter addressed to the governor of the State of Texas. TXDOT filed a plea to the jurisdiction on February 22, 2016, asserting that Navarrette's written notice of claim was not timely and that TXDOT did not have actual notice of his claim. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.101. The plea was supported by the verification of Laura Joy, which stated,

> I am the Director of the Worker's Compensation, Tort and Liability Section of TxDOT, which is the Section that receives notices of claims for potential Texas Tort Claim Act suits against TxDOT.
>
> After reviewing the records of my Section, I have discovered and determined that no written notice of claim has ever been received by the Worker's Compensation, Tort and Liability Section of TxDOT for the subject accident prior to the filing of the above described suit, and there has been no report made to this office of the event in question or any subjective awareness of culpability on the part of TxDOT, so upon my oath and affirmation, I depose and say that TxDOT had no actual notice of the event alleged in the Plaintiff's Original Petition.

The trial court abated the plea to the jurisdiction for a period of sixty days to give Navarrette the opportunity to conduct discovery on the issue of TXDOT's actual notice. Navarrette sought to

depose Laura Joy but, because Joy was no longer employed by TXDOT, TXDOT produced Corey Smyth for deposition instead. Smyth testified that he had helped Joy research whether TXDOT received notice of Navarrette's claim by searching TXDOT's claims system. Based on that search, he testified that no one at TXDOT received notice within six months of the date of Navarrette's injury. He acknowledged, though, that he did not inquire beyond the Occupational Safety Section records to determine whether anyone at a regional or district level had notice of the injury. He stated that his expectation was that, if any such person had received notice, they would have informed the Occupational Safety Section. Smyth also acknowledged that TXDOT has offices in El Paso but stated that he did not contact those offices to determine if they had received notice of Navarrette's injury.

Navarrette did not attempt to depose anyone from TXDOT's El Paso offices or conduct any further discovery on the notice issue. On August 10, 2016, the trial court granted TXDOT's plea to the jurisdiction, dismissed Navarrette's claims against TXDOT with prejudice, and severed the dismissed claims.[1] Navarrette did not file any post-judgment motions nor did he appeal the dismissal of his claims against TXDOT.

While pursuing his remaining claims against A.S. Horner, Inc., Navarrette participated in the deposition of Ricardo Romero, the TXDOT area engineer who oversaw the project manager and inspectors who made sure the Loop 375 construction project was built according to plans. Romero described the project generally as "two direct connects." One project sends traffic flow from Loop 375 north to Zaragoza west. The other one sends the traffic from Zaragoza west to

---

[1] The trial court dismissed Navarrette's claims against the County but denied A.S. Horner, Inc.'s motion for summary judgment seeking dismissal of the claims against it. That summary judgment ruling is the subject of a permissive interlocutory appeal issued by this Court in Number 08-18-00044-CV, styled *A.S. Horner, Inc. v. Rafael Navarrette*.

Loop 375 south. As between TXDOT and A.S. Horner, the project had been finally accepted as of April 15, 2014.

As for Navarrette's injury, Romero testified he knew of it the day after it happened, that there was an accident on the overpass and someone had fallen. He found out from the maintenance department, who had been called the morning after to clean up after the accident. A couple of weeks later, Romero learned that someone had fallen from a gap between the interchange and the highway of the overpass.

Romero testified as follows:

Q: [Navarrette's counsel]: And did they convey to you that a gentleman, first responder, Mr. Navarrette, had fallen through this gap in between the interchange and the highway?

A: [Romero]: Yes, amongst other things. And they weren't specific about what happened. There was an accident in that area, and that's why the responders were there. That was more a general description of what happened. Specifically of someone falling over, that was until later.

Q: [Navarrette's counsel]: All right. When did you find out that somebody had fallen in between that gap between the interchange and the roadway -- the highway?

A: [Romero]: A couple of weeks later.

Q: [Navarrette's counsel]: Okay. And when you found out that a gentleman, specifically my client, you know now, Mr. Navarrette, fell in between that gap between the interchange and Loop 375, did you do anything in response to that?

A: [Romero]: No.

Q: [Navarrette's counsel]: Did you go out there?

A: [Romero]: No.

Q: [Navarrette's counsel]: Take any pictures?

A: [Romero]: No.

Q: [Navarrette's counsel]: Talk to anybody?

A: [Romero]: No.

Romero further stated he did not document this knowledge and did not relay it to anyone else at TXDOT. He also testified that, as far as he knew, time sheets of the maintenance department would show time spent at the scene, as maintenance kept a diary of its activities. He agreed that "if maintenance was aware of the fall of Mr. Navarrette, that may be something documented in the diary[.]" Romero described the area on the overpass where Navarrette fell as "a drainage concrete swale that separates the two barrier walls that separate the Loop 375 northbound traffic and the direct connect that was built by A.S. Horner that sends traffic onto Zaragoza east."

On September 1, 2017, eight months after taking Romero's deposition, Navarrette filed an original petition for bill of review seeking to reinstate his claims against TXDOT. Navarrette asserted that newly-discovered evidence acquired during Romero's deposition shows that TXDOT had actual notice of his injury within six months of its occurrence, and that TXDOT intentionally prevented Navarrette from discovering such actual notice prior to the dismissal of his claims. TXDOT answered and moved to dismiss the bill of review on several grounds including that Navarrette only addressed one aspect of a potential waiver of sovereign immunity—notice of claim—and on that aspect the evidence of actual notice fails. TXDOT further asserted that Navarrette failed to demonstrate a waiver of sovereign immunity and failed to plead facts sufficient to show a *prima facie* meritorious cause of action, extrinsic fraud by TXDOT, or Navarrette's own lack of fault or negligence.

The trial court denied TXDOT's motion to dismiss by written order dated January 24, 2018. This interlocutory appeal followed.

6

**DISCUSSION**

In five issues on appeal, TXDOT asserts: (1) Navarrette's claim is barred because he failed to comply with the statutory notice of claim requirement; (2) Navarrette's claim is barred by the discretionary powers exclusion to the TTCA's waiver of sovereign immunity; (3) Navarrette did not establish his entitlement to judgment on his underlying premises liability claims; (4) Navarrette did not allege or prove extrinsic fraud; and (5) Navarrette did not demonstrate a good excuse for his lack of diligence. Responding, Navarrette asserts the trial court properly denied TXDOT's motion to dismiss; but, in the event we conclude otherwise, that the case should be remanded to allow him an opportunity to replead his claims against TXDOT to invoke the trial court's jurisdiction.

### *Standard of Review*

A trial court's ruling on a motion to dismiss for lack of jurisdiction is reviewed *de novo*. *State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007); *Texas Dept. of Parks and Wildlife v. Miranda*, 133 S.W.3d 217, 225-26 (Tex. 2004). Timely notice of claim is a prerequisite to subject-matter jurisdiction under the TTCA and, thus, presents a question of law subject to *de novo* review. *Worsdale v. City of Killeen*, 578 S.W.3d 57, 66 (Tex. 2019). Further, when the jurisdictional evidence is undisputed on whether a governmental entity had actual notice of claim, a trial court's determination on actual notice is reviewed *de novo*. *Id*.

### *Bill of Review Requirements*

A bill of review is an independent equitable action brought to set aside a final judgment in a former action to which the bill of review petitioner was a party. *Tice v. City of Pasadena*, 767 S.W.2d 700, 702 (Tex. 1989); *Schwartz v. Jefferson*, 520 S.W.2d 881, 889 (Tex. 1975). Bills of

review are closely scrutinized to preserve the sanctity of otherwise final judgments. *Montgomery v. Kennedy*, 669 S.W.2d 309, 312 (Tex. 1984); *Alexander v. Hagedorn*, 226 S.W.2d 996, 998 (Tex. 1950).

To be successful upon a bill of review, a complainant must allege and present *prima facie* proof of the following elements: (1) a meritorious claim or defense to the prior judgment, (2) which the complainant was prevented from making by official mistake or by the opposing party's fraud, accident, or wrongful act, (3) unmixed with any fault or negligence by the complainant. *Baker v. Goldsmith*, 582 S.W.2d 404, 406-07 (Tex. 1979) (citing *Alexander*, 226 S.W.2d at 998).

A *prima facie* meritorious claim is demonstrated when it is determined that the claim is not barred as a matter of law and that the petitioner will be entitled to judgment on retrial if no evidence to the contrary is offered. *Goldsmith*, 582 S.W.2d at 408-09. TXDOT contends that Navarrette's claims are barred as a matter of law because he failed to satisfy the notice of claim requirements contained in the TTCA.

A.  **Whether the trial court erred in denying TXDOT's motion to dismiss**

TXDOT's motion to dismiss Navarrette's bill of review was based upon a lack of subject-matter jurisdiction, which was the same ground on which the prior suit resulted in a judgment against Navarrette. Navarrette now points to newly-discovered evidence that he suggests raises a fact issue on TXDOT's actual notice of his claim and that the evidence was intentionally hidden from his discovery by TXDOT in the prior lawsuit. Thus, whether Navarrette's bill of review is barred as a matter of law due to a lack of TXDOT's actual notice and whether Navarrette has offered *prima facie* proof supporting his bill of review are answered by the same analysis: whether this newly-discovered evidence in Mr. Romero's deposition raises a fact issue as to TXDOT's

8

actual notice of claim under the TTCA's statutory exception to written notice and the Supreme Court of Texas's interpretation of the plain text.

"The Texas Tort Claims Act waives immunity for certain tort claims, including premises defects, to the extent of liability under the Act." *Worsdale*, 578 S.W.3d at 62 (internal quotation marks omitted); TEX. CIV. PRAC. & REM. CODE ANN. § 101.022. One jurisdictional prerequisite to suit under the Act is compliance with the statutory notice requirement. *Worsdale*, 578 S.W.3d at 62. That requirement is that "[a] governmental unit . . . receive notice of a claim against it under this chapter not later than six months after the day that the incident giving rise to the claim occurred." TEX. CIV. PRAC. & REM. CODE ANN. § 101.101(a). The notice must reasonably describe the incident, the time and place of its occurrence, and the damage or injury claimed. *Id.* Such formal notice is not required, however, "if the governmental unit has actual notice that death has occurred, that the claimant has received some injury, or that the claimant's property has been damaged." *Id.* § 101.101(c).

In expounding on the proper construction of the TTCA's notice provision, *Worsdale* recently observed that "the express use of coordinate language in subsections (a) and (c) and the structural relationship between the two—as rule and exception—cannot be ignored in discerning legislative intent." 578 S.W.3d at 70. Consequently, *Worsdale* instructed: "'actual notice' in subsection (c) essentially replicates subsection (a)'s 'notice of a claim' requirement because subsection (c) tethers actual notice to injuries suffered by a 'claimant.'" *Id*. Interpreting these key terms, *Worsdale* noted, "[a] 'claim' is a statement that something yet to be proved is true, the assertion of an existing right, or a demand for money, property, or a legal remedy to which one asserts a right, and a 'claimant' is someone who asserts a right or demand." *Id*. (internal quotation

9

marks omitted). Thus, from a plain-meaning standpoint, as used by the statute, "the term 'notice,' in and of itself, refers to a 'warning' of something 'impending,' especially 'to allow preparations to be made.'" *Id*. Bringing it all together, *Worsdale* concluded:

> Subsection (c) does not require that the governmental unit know that the claimant has actually made an allegation of fault[] but use of the term "claimant" necessarily refers to information identifying *which* loss. The statutory language, construed together rather than in isolation, requires not only knowledge of some harm but also information sufficient to (1) identify the particular loss ultimately alleged and (2) alert the governmental unit to something impending—for any number of reasons, but especially to allow preparations to be made.

*Id*. at 70-71 (internal citations omitted).

In *Worsdale*, the Supreme Court of Texas further noted that "[a] recurrent theme in [its] jurisprudence is the importance of notice as a means of alerting governmental entities of the need to investigate claims." *Id*. at 64. That goal is not served "if a governmental unit is not subjectively aware that its alleged acts or omissions contributed to or produced injuries in the way the claimant ultimately alleges." *Id.* Consequently, "[w]hen the facts do not even *imply* the governmental unit's fault, they are legally insufficient to provide actual notice." *Id*. The court has been emphatic in holding that "[k]nowledge that a death, injury, or property damage has occurred, standing alone, is not sufficient to put a governmental unit on actual notice for TTCA purposes." *City of San Antonio v. Tenorio*, 543 S.W.3d 772, 776 (Tex. 2018) (citing *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995)).

To be clear, *Worsdale* emphasized the standard by which actual notice of claim is assessed:

> We have plainly stated, however, that a governmental unit need only achieve subjective awareness of fault as ultimately alleged by the claimant. In other words, there must be subjective awareness connecting alleged governmental conduct to causation of an alleged injury to person or property in the manner ultimately asserted. The standard is necessarily subjective, because lack of formal notice is excused only by actual, not constructive, notice. Yet at the same time, subjective

10

awareness of alleged fault requires neither adjudication of liability nor confession of fault.

*Worsdale*, 578 S.W.3d at 65 (internal quotation marks omitted). The necessary fault, in this context, "is not synonymous with liability; rather, it implies responsibility for the injury claimed." *Id.* at 66 (citing *Univ. of Tex. Sw. Med. Ctr. at Dallas v. Estate of Arancibia*, 324 S.W.3d 544, 550 (Tex. 2010)). Thus, in short, "[a]ctual notice means the governmental unit is subjectively aware that it may be responsible for death, injury, or property damage in the manner ultimately alleged by the claimant." *Worsdale*, 578 S.W.3d at 77.

*Worsdale* considered two prior opinions in which it had addressed the issue of actual notice, one in the context of an allegedly dangerous roadway condition and the other in the context of an allegedly negligent activity. *See id.* at 64-65 (discussing *City of Dallas v. Carbajal*, 324 S.W.3d 537 (Tex. 2010) (per curiam), and *City of San Antonio v. Tenorio*, 543 S.W.3d 772 (Tex. 2018)). The plaintiff in *City of Dallas v. Carbajal* sued the City of Dallas for personal injuries she sustained when she drove her car onto an excavated road. A police officer who responded to the accident reported that the plaintiff drove her "veh[icle] into [a] gap in [the] street [that] was not properly blocked." 324 S.W.3d at 538. The Supreme Court concluded that the report did not constitute actual notice of claim: "Although both parties agree that the road was not properly blocked, the report here did not provide the City with subjective awareness of fault because it did not even imply, let alone expressly state, that the City was at fault." *Id.* at 539.

In *City of San Antonio v. Tenorio*, a motorcycle operator was killed, and his passenger seriously injured when they were struck head-on by a vehicle that had been fleeing the police. The police had stopped their pursuit when the fleeing suspect entered the highway heading in the wrong direction. 543 S.W.3d at 774. The Supreme Court again concluded that there was no actual notice

11

sufficient to satisfy the TTCA:

> Evidence that a vehicle being pursued by the police is involved in a collision is not, by itself, sufficient to raise a fact question about whether the City, for purposes of the TTCA, had subjective awareness that it was in some manner at fault in connection with the collision. While the crash report listed a factor and condition contributing to the crash as "Fleeing or Evading Police," this is not an express statement or even an implication that the officers or the City were at fault in regard to the collision.

*Id.* at 778.

*Worsdale* itself, on the other hand, provides an example of facts sufficient to demonstrate actual notice of claim. In that case, a motorcycle operator and his passenger were killed when they collided with a mound of dirt spanning the entire width of an unlit road. 578 S.W.3d at 60. The obstruction was not marked by any warning signs or barricades. *Id.* The crash investigation revealed that the City (1) was aware that the road had been obstructed for over two years, (2) it had not removed the obstruction because it believed that the county was responsible for the road, yet (3) the City in fact owned the road because it had never passed an ordinance abandoning it. *Id.* Two days after the accident, the City removed the dirt mound. *Id.* The Supreme Court concluded that the City had actual notice of claim:

> Well within section 101.101's six-month notice deadline, the City knew of allegations that it was responsible for maintaining a road and that the failure to maintain the road had been identified as a contributing factor to the injuries that provide the basis for this lawsuit. Whether the City believed it was liable or not is not the standard.

*Id.* at 66-67.

Similarly, in *Reyes v. Jefferson County*, the county was determined to have had actual notice of a claim under TTCA, but only because the county's claims administrator knew about the claimant's allegations he was injured when an on-duty county police officer, driving a county-

owned vehicle, crashed into him. 601 S.W.3d 795, 796 (Tex. 2020).

In this case, the facts on which Navarrette relies to establish actual notice are (1) that TXDOT maintenance employees learned the morning after the incident that a vehicle accident had occurred on the overpass and "that someone had fallen," and (2) the maintenance department informed Ricardo Romero, TXDOT's area engineer, of the vehicle accident the morning after it occurred, and he further learned, a couple of weeks later, that a gentleman had fallen through a gap between the interchange and Loop 375. Romero testified that after learning of the fall he did not go out to the area of the incident, did not take any pictures, and did not talk to anybody. Navarrette relies solely on the deposition testimony of Romero to support his argument.

As instructed by the Supreme Court of Texas, knowledge that an injury occurred, standing alone, is not enough to put a governmental unit on actual notice for the purposes of the TTCA. *See Tenorio*, 543 S.W.3d at 776 (citing *Cathey*, 900 S.W.2d at 341); *Harris Cty. Sports & Convention Corp. v. Cuomo*, 604 S.W.3d 149, 154 (Tex. App.—Houston [14th Dist.] 2020, no pet.). Or, stated differently, "mere knowledge that something happened somewhere to someone" does not satisfy the TTCA's actual-notice requirement. *Worsdale*, 578 S.W.3d at 72.

Plainly, TXDOT's knowledge that someone fell through a gap on the overpass—between the interchange and Loop 375—does not alone provide information sufficient to identify the loss ultimately alleged such as to alert the governmental unit to something impending therefrom to allow preparations to be made. *See Worsdale*, 578 S.W.3d at 70; s*ee also Tenorio*, 543 S.W.3d at 778 (knowledge that police pursuit was factor and condition contributing to crash insufficient to constitute actual notice of claim); *Carbajal* 324 S.W.3d at 539 (knowledge of accident occurring through gap in street barricade not sufficient to constitute actual notice of claim). Stated another

13

way, knowledge of the existence of either the gap or the fall, standing alone, is not subjective awareness connecting the alleged governmental conduct to causation of an alleged injury to a person or property in the manner Navarrette ultimately alleged. *See Worsdale*, 578 S.W.3d at 65. (actual notice requires subjective awareness that the entity may be responsible for an injury in the manner ultimately alleged by claimant).

Here, unlike the evidentiary record established in *Tenorio*, the information known to TXDOT, as shown by area engineer Romero's testimony, no doubt established TXDOT's knowledge of an injury; but, as required by *Worsdale*, it did not otherwise establish that either Romero or TXDOT had subjective awareness connecting TXDOT's conduct to the proximate cause of the injury as ultimately alleged by plaintiff. *See id*. Romero had knowledge of a first responder falling from an overpass while responding to an accident, but he gave no further indication, either by his testimony or his description of his subsequent actions, that he had awareness of TXDOT's alleged role in proximately causing such incident. *See id*. at 68 ("Evidence of subsequent remedial measures is inadmissible to prove liability but admissible for other purposes, including to prove ownership, control, and notice."). Plainly, Romero testified he did not go to the scene, he did not take pictures, nor did he talk with anyone regarding the incident.

In short, nothing in the evidence on which Navarrette relies establishes that TXDOT had subjective awareness connecting its alleged conduct in causing Navarrette's injury in the manner ultimately asserted. *See Worsdale*, 578 S.W.3d at 65; *cf. Tenorio*, 543 S.W.3d at 778 (finding no actual notice even though report identified police conduct as factor contributing to accident). On the contrary, the evidence demonstrates nothing more than TXDOT's knowledge that a motor vehicle collision had occurred on an overpass that resulted in a person falling through a gap

14

between the interchange and the highway. Such limited knowledge lacking key elements of awareness is "not sufficient to put a governmental unit on actual notice for TTCA purposes." *Tenorio*, 543 S.W.3d at 776. In construing the required terms, *Worsdale* held: "The statutory language, construed together rather than in isolation, requires not only knowledge of some harm but also information sufficient to (1) identify the particular loss ultimately alleged and (2) alert the governmental unit to something impending—for any number of reasons, but especially to allow preparations to be made." *Worsdale*, 578 S.W.3d at 70-71.

We hold that the undisputed evidence in this case is legally insufficient to demonstrate that TXDOT had actual notice of Navarrette's claim within six months after the incident giving rise to that claim even after considering the nature and extent of Romero's knowledge of Navarrette's injury. *See id*. at 66; TEX. CIV. PRAC. & REM. CODE ANN. § 101.101. Because notice of claim is a jurisdictional prerequisite to suit under the TTCA, the trial court erred by denying TXDOT's motion to dismiss Navarrette's bill of review. *See Worsdale*, 578 S.W.3d at 62.

The dissent argues that the maintenance department's reporting of Navarrette's fall to Romero is evidence that the maintenance employee may have had subjective knowledge of TXDOT's possible liability. But our record does not include any evidence from the maintenance section and Romero himself testified that the employee only reported that someone had fallen in between that gap between the interchange and the roadway, not that the injured person who fell was alleging some defect in the premises. This evidence, coupled with the fact that Romero did not take any subsequent action whatsoever nor pass any information to others, only shows that TXDOT knew that an injury had occurred from a fall from a highway overpass, but it does not show any notice of claim, warning, or information identifying the particular loss ultimately alleged

15

(i.e., a fall caused by a defectively designed and installed cement catwalk without restraining railings). *See id*. at 70-71.

The dissent criticizes Romero's policy of only investigating cases involving fatalities. However, actual notice under the TTCA is a subjective standard, and even if a prudent person should have investigated an incident, the actual-notice requirement is not met under that circumstance. *See Tenorio*, 543 S.W.3d at 776 ("The actual notice requirement is not met just because the governmental unit (1) should have investigated an accident as a prudent person would have, (2) investigated an accident as part of its routine safety procedures, or (3) should have known it might have been at fault based on its investigation.").

Even with Navarrette's new evidence, he has not raised a fact issue as to TXDOT's actual notice of claim within six months of the incident. As a result, the trial court lacks subject-matter jurisdiction. Additionally, and for the same reasons stated above, Navarrette has not provided *prima facie* evidence of the first requirement of a bill of review. As a result, the trial court erred in denying TXDOT's motion to dismiss Navarrette's bill of review. Because this holding is dispositive of the appeal, we need not address TXDOT's remaining issues.

## B. Navarrette's request for an opportunity to replead

Navarrette argues that he should be given an opportunity to replead to allege facts sufficient to invoke jurisdiction under the TTCA. This opportunity is available when a jurisdictional challenge is based on a deficiency in plaintiff's pleading but the pleading "does not affirmatively demonstrate incurable defects in jurisdiction . . . ." *Cty. of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002); *see Miranda*, 133 S.W.3d at 226-27. The opportunity to replead is not available, however, "if the pleadings affirmatively negate the existence of jurisdiction . . . ." *Brown*, 80

16

S.W.3d at 555. It is also not available if the jurisdictional challenge contests the existence of jurisdictional facts and the undisputed facts establish a lack of jurisdiction. *See Miranda*, 133 S.W.3d at 227.

TXDOT's motion to dismiss challenged both Navarrette's pleadings and the existence of jurisdictional facts—specifically, the existence of actual notice of claim. The facts alleged by Navarrette and the undisputed evidence of those facts negate the existence of actual notice and, thus, the existence of jurisdiction. In these circumstances, Navarrette is not entitled to an opportunity to replead.[2] *See Miranda*, 133 S.W.3d at 227; *Brown*, 80 S.W.3d at 555.

## CONCLUSION

The record establishes that Navarrette did not satisfy the notice of claim requirement contained in the TTCA. Because that requirement is jurisdictional, failure to satisfy it bars Navarrette's claims as a matter of law. The trial court therefore erred by denying TXDOT's motion to dismiss Navarrette's bill of review. The trial court's January 24, 2018 order denying TXDOT's motion to dismiss Navarrette's bill of review for lack of jurisdiction is reversed and judgment is rendered dismissing Navarrette's bill of review.


GINA M. PALAFOX, Justice

March 19, 2021

Before Rodriguez, C.J., Palafox, J., and Larsen, J. (Senior Judge)
Rodriguez, C.J., dissenting
Larsen, J. (Senior Judge), sitting by assignment

---

[2] We note that Navarrette does not identify any additional allegations or facts that it could raise in an amended pleading to cure the lack of a timely notice of claim.